**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

REGINALD BERNARD NELSON,

        Petitioner,

v.                                Case No. 8:14-cv-1257-T-36JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

        Respondent.

_____/

## <u>ORDER</u>

Reginald Bernard Nelson, a Florida inmate, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Hillsborough County convictions. (Dkt. 1.) In the response (Dkt. 6), Respondent agrees that the petition is timely. Nelson filed a reply. (Dkt. 11.) After consideration, the petition will be denied.

## PROCEDURAL HISTORY

Nelson was charged with two counts of attempted first degree murder (counts one and two), two counts of aggravated assault (counts three and four), and one count of shooting at, within, or into a vehicle (count five). (Dkt. 8, Ex. 1.) His first trial ended in a mistrial. (Dkt. 8, Ex. 3, p. 332.) Upon retrial, Nelson was convicted of the lesser-included charges of attempted second degree murder on counts one and two, and was convicted of the remaining counts as charged. (Dkt. 8, Ex. 6.)

On counts one and two, the trial court sentenced Nelson to life in prison as a habitual felony offender. (Dkt. 8, Ex. 7, pp. 149-50.) The court imposed minimum

mandatory terms of 30 years as a prison releasee reoffender and minimum terms of 20 years in prison under § 775.087, Fla. Stat. (*Id.*, p. 150.) On counts three and four, the trial court sentenced Nelson to 20 years in prison as a habitual felony offender and imposed 20-year mandatory minimum terms pursuant to § 775.087, Fla. Stat. (*Id.*, pp. 153-54.) On count five, the trial court sentenced Nelson to 30 years in prison as a habitual felony offender. (*Id.*, pp. 157-58.) The state appellate court *per curiam* affirmed. (Dkt. 8, Ex. 13.)

Nelson filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 14.) He also filed an amended motion after several of his claims were dismissed. (Dkt. 18.) The state court denied Nelson's motions. (Dkt. 8, Exs. 15, 19, 21, 25.) The state appellate court *per curiam* affirmed the denial of relief. (Dkt. 8, Ex. 29.) Nelson's first successive postconviction motion was dismissed without prejudice. (Dkt. 8, Ex. 31.) Nelson then filed a second successive postconviction motion alleging newly discovered evidence. (Dkt. 8, Ex. 32.) The state court denied this motion, and the state appellate court *per curiam* affirmed. (Dkt. 8, Exs. 33, 35.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The state appellate court affirmed Nelson's convictions and sentences and affirmed the denial of his postconviction motions without discussion. The court's decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court

adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

## DISCUSSION

**Ground Two: Trial Court Error**

Nelson claims that the trial court erred in denying his motion to suppress Paul Carey's out-of-court identification of him. He argues that Detective Danny Connell utilized an impermissibly suggestive identification procedure when he showed Carey a single photograph of Nelson, resulting in a federal due process violation.

At the hearing, Carey testified that he knew Nelson as "Reggie," and that the two men met when Carey was selling items at his house. (Dkt. 8, Ex. 3, p. 141.) Nelson spent two or three hours with Carey and decided to buy a boat and a truck. (*Id.*, pp. 141-42.) He left to obtain payment and, upon returning, spent another 45 minutes to an hour with Carey. (*Id.*, pp. 142-43.) Nelson left and came back a third time to retrieve the boat and truck and the two spent 20 to 25 minutes together. (*Id.*, p. 144.)

Carey testified that he next saw Nelson when he was driving his RV and a car flashed its lights at him. (*Id.*) Carey testified that after he pulled over, Nelson entered the RV. (*Id.*, p. 145.) He testified that he recognized Nelson due to their earlier meetings. (*Id.*) Carey testified that he and Nelson were "face to face" in the RV and had a conversation about the items that Nelson had purchased. (*Id.*, pp. 148-49.) Carey testified that Nelson pulled out a firearm and that he was paying attention to Nelson at that time because "he was acting a little crazy and mean and stuff like that there, and then next thing you know he reached in and pulled out a .38." (*Id.*) Nelson's charges resulted from his actions in and

near the RV.[1]

Detective Connell testified that he received a description of the perpetrator as a black male who stood 5'10" to 6' tall, weighed 220 to 230 pounds, was bald, and had brown eyes. (*Id.*, p. 138.) The description contained no reference to the suspect having tattoos or gold teeth, and Carey did not notice such characteristics. (*Id.*, pp. 138, 147.) After investigation, Detective Connell obtained a photograph of Petitioner Reginald Nelson, and showed it to Carey. (*Id.*, p. 134.) Carey "immediately" identified him as the perpetrator. (*Id.*) Carey recalled Detective Connell showing him Nelson's photograph one or two days after the crimes. (*Id.*, p. 149.) The trial court denied the motion to suppress after the hearing:

> In this particular case, based upon <u>Manson</u>,[2] which is a U.S. Supreme Court case, I'm supposed to take the totality of the circumstances. When I look at whether the single photograph by itself would suggest or whether there's other circumstances tending to show this is, in fact, the same person.
>
> Given the fact, the description by the victims along with all the other facts and circumstances of this case, I do not believe that this single photograph was unduly suggestive.

(*Id.*, pp. 157-58.)

In determining whether an identification violates due process, a court undertakes a two-part analysis. "First, we must determine whether the original identification procedure was unduly suggestive. . . . If we conclude that the identification procedure was suggestive, we must then consider whether, under the totality of the circumstances, the identification

---

[1] Carey testified at trial that Nelson said he wanted his money back because the truck was broken , that Nelson threatened Carey and his passenger, Virginia Vaughn, and pointed a firearm at them while they were inside the RV, and that Nelson later fired shots into the RV. (Dkt. 8, Ex. 5, pp. 627-38.)

[2] *Manson v. Brathwaite*, 432 U.S. 98 (1977).

was nonetheless reliable." *Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988). *See Neil v. Biggers*, 409 U.S. 188, 199 (1972) ("[T]he central question" is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive.").

A single photograph procedure may be unduly suggestive. *United States v. Cueto*, 611 F.2d 1056, 1063-64 (5th Cir. 1980). But Nelson has not identified any clearly established federal law[3] holding that this procedure is unduly suggestive when, as here, the victim has stated to police that the perpetrator is known to him. *Cf. Manson v. Brathwaite*, 432 U.S. 98, 111-12 (1977) (addressing concerns with eyewitness identifications and noting that "[u]sually the witness must testify about an encounter with a total stranger" and "[t]he witness' recollection of the stranger can be distorted easily by the circumstances or by later actions of the police."). Moreover, even assuming that the single photograph procedure was unduly suggestive, Nelson has not demonstrated that Carey's identification of him was so unreliable as to violate due process.

"For an identification to be unconstitutionally unreliable, there must be 'a substantial risk of misidentification.'" *United States v. Walls*, 237 Fed. App'x 599, 601 (11th Cir. 2007) (quoting *Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987)). Factors used in "evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

---

[3] The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

*Biggers*, 409 U.S. at 199-200. "[R]eliability is the linchpin in determining the admissibility of identification testimony. . . . Against [the *Biggers*] factors is to be weighed the corrupting effect of the suggestive identification itself." *Brathwaite*, 432 U.S. at 114.

Applying the *Biggers* factors reveals no substantial risk of misidentification. Carey's testimony indicates that he had ample opportunity to view Nelson at the time of the crime. Nelson remained in the RV long enough to have a conversation with Carey, and the two were "face to face." Additionally, Carey testified that he was paying attention to Nelson because of the way he was acting. And while Nelson claims that Carey failed to note his gold teeth and tattoos, he did not contest the accuracy of the characteristics that Carey described to police.[4] Carey also identified Nelson immediately when Detective Connell showed him Nelson's photograph. Furthermore, the length of time between the crime and the confrontation was only one or two days. Nelson has not demonstrated that this passage of time affected the reliability of Carey's identification. *See, e.g., Nettles v. Wainwright*, 677 F.2d 410, 414 (5th Cir. Unit B 1982) (identification made within two days of the crime was reliable). Nelson does not establish that any "corrupting effect" of the single photograph procedure rendered the identification unreliable when considered against these factors, and in light of Carey's familiarity with Nelson.

Under the totality of the circumstances, Carey's out-of-court identification of Nelson was not unconstitutionally unreliable. The state court's rejection of Nelson's motion to suppress the identification was not contrary to or an unreasonable application of clearly

---

[4] Carey told police that the perpetrator was bald; his description did not mention whether Nelson had facial hair. Nelson asserts in his habeas petition that Nelson "revealed at trial that he had a beard and an afro at the time of the incident." (Dkt. 1, p. 24.) But Nelson did not assert in his motion to suppress or at the evidentiary hearing that he had hair or a beard. (Dkt. 8, Ex. 2; Ex. 3, pp. 129-161.)

established federal law and was not based on an unreasonable determination of the facts. Nelson is not entitled to relief on Ground Two.

**Ground One: Ineffective Assistance of Counsel**

Standard For Ineffective Assistance Of Counsel Claims

A claim of ineffective assistance of counsel is analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. To show deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Nelson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, Nelson must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because review is "doubly" deferential to counsel's performance and the state court's ruling. *Richter*, 562 U.S. at 105; *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011). If

a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Exhaustion Of State Court Remedies And Procedural Default; Application of *Martinez v. Ryan*

A federal habeas petitioner must exhaust his claims for relief by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

Two of Nelson's ineffective assistance claims are exhausted. But he raises seven claims of ineffective assistance of trial counsel that are unexhausted due to his failure to assert them in state court. This failure leads to a procedural default of the claims, because under Florida Rule of Criminal Procedure 3.850(b), Nelson cannot now present them to the state court in an untimely postconviction motion. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief."). The claims are barred unless Nelson establishes the applicability of either the cause and prejudice or fundamental miscarriage of justice exception. *See id.*

Nelson also presents one claim of ineffective assistance of trial counsel that is procedurally defaulted because, although the federal claim was asserted in state court, it was resolved through application of an independent and adequate state procedural bar. *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999). Claims defaulted in this manner are also barred subject to the cause and prejudice or fundamental miscarriage of justice exception. *See Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show" the applicability of either the cause and prejudice or fundamental miscarriage of justice exception).

Nelson does not allege that the fundamental miscarriage of justice exception applies. He does allege, however, that he has established applicability of the cause and prejudice exception pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). Ineffective assistance of postconviction counsel generally does not constitute cause. *See Coleman v. Thompson*, 501 U.S. 722, 752-55 (1991). *Martinez* recognizes a narrow, equitable exception to this rule:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 17. "To overcome the default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14. Because

none of Nelson's defaulted claims of ineffective assistance of trial counsel are substantial, he fails to show the applicability of the cause and prejudice exception under *Martinez* to overcome the procedural default.

**Ground One(E)**

Nelson asserts that trial counsel was ineffective for failing to present evidence showing that his appearance at the time of the offenses was inconsistent with Carey's description of him.

(1) Exhausted Claim

Carey testified at trial that Nelson was bald but that he did not notice whether Nelson had gold teeth or tattoos. (Dkt. 8, Ex. 5, p. 667.) Nelson claims that counsel was ineffective in not calling his brother, Bobby Dewayne Nelson, and another individual, Shantell Wallace,[5] to testify that he had hair, gold teeth, and tattoos at the time of the crimes. Nelson further asserts that because counsel did not call these witnesses, the only way he could inform the jury of his appearance was to testify himself. He asserts that he was therefore subjected to cross-examination during which he was impeached with a prior inconsistent statement.

The state court denied Nelson's ineffective assistance claim after obtaining a response from the State:

> Defendant asserts counsel was ineffective for failure to call Bobby Dwayne Nelson and Shantell Wallace to testify that Defendant's physical appearance at the time of the offenses did not match the victim's description. He alleges they were both available to testify that Defendant had a one-inch afro, gold teeth and tattoos on his arms, which would be contrary to the victim's

---

[5] Wallace's relation to Nelson is unclear. In different parts of the record, she is referred to as Nelson's sister or his girlfriend.

testimony.  In addition he alleges that he was prejudiced because in order to show his gold teeth and tattoos to the jury, he had to testify and be subjected to cross examination.  Defendant asserts that but for counsel's failure to call these witnesses; the verdict would be one of not guilty.

The State argues Defendant has not shown prejudice because the evidence that he had tattoos and gold teeth at the time of the incident was in fact demonstrated to the jury.  The State cites to the trial transcript where Defendant took the stand and testified as to his tattoos and gold teeth and actually demonstrated them to the jury.  In addition Defendant testified that he had a beard and a long afro haircut back in 2002 when the crime took place.  The State further points out that Defendant could have confined his testimony to matters relating only to his appearance at the time of the crime.  By choosing to testify on other subjects, the State argues, the door was opened to other areas on cross examination.  The State argues that any prejudice was a result of Defendant's testimony going beyond his physical appearance on the day of the offense, not because of the alleged failure to introduce other witnesses.

The Court finds the State's argument persuasive.  Defendant's claim is refuted by the record.  **As such, the Defendant is not entitled to any relief on Ground 8.**

(Dkt. 8, Ex. 21, pp. 156-57) (emphasis in original) (court's record citations omitted).

As the state court noted, Nelson testified at trial that his appearance at the time was inconsistent with Carey's description and displayed his gold teeth and tattoos.  (Dkt. 8, Ex. 5, pp. 855-58.)  While Nelson argues that Shantell Wallace and Bobby Dewayne Nelson would have corroborated his testimony, he has not presented any evidence that these witnesses would have testified as he suggests.  *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).  He therefore cannot obtain relief on his claim.  *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001)

("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)). Accordingly, that Nelson testified in order to bring information about his appearance before the jury cannot be attributed to ineffective assistance of counsel for failure to present the information through the other witnesses. Nelson is not entitled to relief because he has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.

(2) Procedurally Defaulted Claims

Nelson asserts that counsel should have (1) called Bobby Dewayne Nelson and Shantell Wallace to elicit their testimony that he had a beard at the time of the offenses; (2) called the officers who arrested him and introduced his booking photograph to show that he had hair, gold teeth, and tattoos when he was taken into custody; and (3) submitted "authenticated" photographs of him in "February 2002." (Dkt. 1, p. 14.)

Nelson did not present these specific allegations of ineffective assistance in his amended postconviction motion. (Dkt. 8, Ex. 18, pp. 607-15.) When a petitioner's federal habeas petition raises facts in support of a claim that were not before the state court, the petitioner has failed to fairly present the federal claim to the state court. *See Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) (rejecting the argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court."); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) ( "It is not enough that all the facts necessary to support the federal claim were before the state courts . . . or

that a somewhat similar state-law claim was made."). Nelson's ineffective assistance claims are unexhausted and procedurally defaulted.

Moreover, these claims are not substantial. Nelson has not presented evidence showing what testimony Bobby Dewayne Nelson, Shantell Wallace, or the arresting officers would have given. His claims about these witnesses are therefore too speculative to demonstrate that counsel was ineffective. *See Ashimi*, 932 F.2d at 650; *Johnson*, 256 F.3d at 1187. Additionally, testimony that Nelson had a beard would not have helped to refute Carey's description because Carey's testimony did not address whether Nelson had any facial hair. (Dkt. 8, Ex. 5, pp. 667-70.)

Nelson's claims about photographic evidence are also speculative, as he has not provided his booking photograph or any "authenticated" photographs of himself in "February 2002." Furthermore, Nelson does not establish that his appearance on June 27, 2002, the date of his arrest, was the same as it was when the crimes occurred approximately four and a half months earlier on February 8, 2002. (Dkt. 8, Ex. 5, p. 876.) And he has not demonstrated that any photographs from "February 2002" would in fact show him the same way he appeared on February 8, 2002. Accordingly, Nelson has not demonstrated that his counsel was ineffective. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). As none of Nelson's procedurally defaulted claims raised within Ground One(E) qualify as substantial claims for purposes of establishing cause under *Martinez*, he fails to overcome the procedural default.

**Ground One(F)**

Nelson argues that trial counsel was ineffective for failing "to adequately investigate

Paul Carey's criminal history and impeach his testimony with his prior criminal convictions."

(Dkt. 1, p. 15.)

(1) Exhausted Claim

In his amended postconviction motion, Nelson raised this claim with respect to Carey's criminal history in California. (Dkt. 8, Ex. 18, pp. 599-601.) After conducting an evidentiary hearing, the state court denied this claim:

> [A]t the evidentiary hearing, Defendant could not produce any evidence to support his claim that the victim had committed crimes in California for which he could be impeached in Florida. Moreover, Defendant's Motion to Supplement, filed on October 5, 2009, fails to provide any evidence that the victim had committed any crimes in California. Furthermore, at the evidentiary hearing, counsel testified that he did depose the victim, and investigated his prior criminal history. Counsel testified at the hearing that he was told by the Defendant that the victim might have a significant criminal history in California, and that as a result, he had an investigator explore the victim's criminal history from California. The Court finds counsel to be credible. *See Smith v. State*, 697 So.2d 991, 992 (Fla. 4th DCA 1997) (stating that, following an evidentiary hearing, the finder of fact can rely upon testimony it finds to be credible). As counsel did investigate the victim's criminal history from California, counsel cannot be deemed ineffective for failing to so investigate.

(Dkt. 8, Ex. 25, pp. 190-91) (court's record citations omitted).

Counsel testified at the evidentiary hearing that he investigated Carey's criminal history. (Dkt. 8, Ex. 23, pp. 249-50.) Nelson fails to overcome, by clear and convincing evidence, the state court's factual determination that counsel's testimony was credible. *See* 28 U.S.C. § 2254(e)(1); *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's].")*; Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28

U.S.C. § 2254(d).").

Furthermore, the supplemental documentation Nelson provided to the state court, a "Criminal Background Check On Paul Carey" performed by AP Investigations, states that "[n]othing was found from 1987 to 1994 when [Carey] lived in California." (Dkt. 8, Ex. 24, p. 188.)   Under these circumstances, Nelson has failed to establish that trial counsel rendered ineffective assistance.   He does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.

(2) Procedurally Defaulted Claim

Nelson also asserts that counsel was ineffective for failing to investigate Carey's Florida criminal history.   It appears that Nelson raised this claim in his first successive motion for postconviction relief, arguing that this claim was supported by the newly discovered evidence presented in the AP Investigations document.[6]   The state court determined that Nelson's claim was "based on evidence considered by the Court" in denying Nelson's amended postconviction motion and was "arguably similar to a claim currently on appeal" of the denial of that motion.   (Dkt. 8, Ex. 31, p. 3.)   Because the postconviction appeal remained pending, the state court found that it lacked jurisdiction to consider Nelson's successive motion, and denied it. (*Id.*)

When the state court's rejection of a federal constitutional claim on procedural grounds is based on an "independent and adequate" state ground, federal review of the claim is foreclosed.   *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).   A state court's

---

[6] Nelson's first successive postconviction motion was not provided in the record before this Court. The state court's order dismissing that motion provides that Nelson alleged "ineffective assistance of counsel due to counsel's failure to conduct an adequate pretrial investigation of the alleged victim Paul Carey" and explained that Nelson "attached to his motion a document on AP Investigations letterhead listing the victim's prior Florida criminal history."   (Dkt. 8, Ex. 31, pp. 1, 3.)

procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Id.* (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 562 U.S. 307, 316 (2011) (citation omitted).

In Florida, the rule that a lower court lacks jurisdiction over a claim pending on appeal is firmly established and regularly followed. *See Tompkins v. State*, 894 So.2d 857, 859 (Fla. 2005) ("[T]he circuit court did not have jurisdiction to consider Tompkins' motions while the appeal of the denial of his previous motions, which raised similar claims, was pending in [The Florida Supreme] Court.") (citing *Daniels v. State*, 712 So.2d 765, 765 (Fla. 1998) and *State v. Meneses*, 392 So.2d 905, 907 (Fla. 1981)). *See also Jackman v. State*, 88 So.3d 325, 327 (Fla. 4th DCA 2012) ("[A] trial court has authority to consider or to defer ruling and stay a subsequently filed postconviction motion that raises *unrelated issues* notwithstanding the pendency of an appeal of an order on a previously filed postconviction motion.") (emphasis added). Accordingly, Nelson's claim of ineffective assistance of trial counsel is procedurally defaulted. *See Harris v. Reed*, 489 U.S. at 262. Nelson has not shown a substantial claim of ineffective assistance of trial counsel sufficient to establish

cause pursuant to *Martinez*.[7]

Preliminarily, in denying Nelson's newly discovered evidence claim, the state court found that Carey was only subject to impeachment for one misdemeanor conviction involving theft or dishonesty, a 1999 conviction for theft of electricity. (Dkt. 8, Ex. 33, p. 5.) And, Carey admitted on direct examination that he had one conviction for misdemeanor involving theft or dishonesty. (Dkt. 8, Ex. 5, pp. 661-62.) Although Nelson asserts that Carey actually had two prior convictions for misdemeanors involving dishonesty, he does not establish that Carey had any other particular conviction other than the 1999 conviction for theft of electricity that could have been used for impeachment. Therefore, Nelson does not establish that counsel was ineffective for failing to investigate Carey's Florida criminal history.

But even assuming that Carey had a second misdemeanor conviction that counsel could have uncovered and used to impeach him, Nelson has not shown prejudice. Carey testified at trial in jail clothing, admitted that he was housed in a Hillsborough County jail and had a pending case, and, as addressed, admitted to one conviction involving theft or dishonesty. (*Id.*, pp. 609-10.) Under these circumstances, Nelson does not show a reasonable probability that learning of a second conviction would have caused the jury to discredit Carey's testimony such that the outcome of the trial would have been different.

Under these circumstances, Nelson has not established that counsel performed

---

[7] Nelson's claim that postconviction counsel, appointed for his evidentiary hearing, failed to argue about Carey's Florida history is interpreted as invoking *Martinez*. But to the extent Nelson intends to present an independent claim of ineffective assistance of postconviction counsel, his claim is not cognizable on federal habeas review. *See Lambrix v. Sec'y, Dep't of Corr.*, 756 F.3d 1246, 1262-63 (11th Cir. 2014) ("*Martinez* did not . . . create a freestanding claim for challenging a conviction or sentence based on the alleged ineffective assistance of state post-conviction counsel.") (citing *Chavez v. Sec'y, Fla. Dep't of Corr.*, 742 F.3d 940, 944 (11th Cir. 2014)).

deficiently in failing to further investigate Carey's criminal history in Florida, or that there is a reasonable probability the outcome of trial would have been different had counsel done so. Therefore, Nelson has not presented a substantial claim of ineffective assistance of trial counsel to overcome the procedural default. Ground One(F) does not warrant relief.

**Ground One(A)**

The trial and conviction of a mentally incompetent defendant violates due process. *Pate v. Robinson*, 383 U.S. 375 (1966). The standard for competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Nelson asserts that his trial counsel was ineffective for failing to investigate his competency to stand trial and for failing to move the court for a competency hearing.[8] He contends that if counsel had sought a competency evaluation, experts would have examined him and found him incompetent to proceed.

Nelson alleges that he displayed signs of mental illness and mental retardation; that he was disruptive in the courtroom and was incapable of communicating with counsel or making rational decisions; that he filed frivolous *pro se* motions while represented by counsel; that the trial court found he was not competent to act as his own attorney; and that the court dismissed its finding holding him in contempt "due to questions about [his] mental competence." (Dkt. 1, p. 6.) He also recites the language of *Dusky* and the criteria for

---

[8] Florida Rule of Criminal Procedure 3.210(b)(1) provides that defense counsel can move the court for an examination of a defendant's mental condition if counsel has reasonable grounds to believe that the defendant is not competent to proceed.

competency to proceed set forth in Florida Rule of Criminal Procedure 3.211.[9]

Nelson has not demonstrated that his counsel was ineffective. Nelson's alleged disruptive courtroom behavior does not establish his incompetency. *See Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[B]izarre, volatile, and irrational behavior" cannot "be equated with mental incompetence to stand trial."). Similarly, Nelson's allegation that he displayed signs of mental illness fails to demonstrate his incompetency. *See id.* ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (quoting *Cara v. Singletary*, 981 F.2d 481, 487-88 (11th Cir. 1992)). Nor does Nelson establish that unspecified signs of his "mental[] retard[ation]", mere "questions" about his competency, his filing of unauthorized *pro se* motions, or his being found incompetent to act as his own attorney showed that he lacked a rational and factual understanding of the proceedings or the ability to consult with counsel with a reasonable degree of rational understanding. *See Dusky*, 362 U.S. at 402.

Furthermore, although Nelson alleges he was incapable of communicating with counsel, his postconviction evidentiary hearing testimony shows that he did confer with counsel about matters relevant to his case. He testified that he provided information to his attorney concerning Carey's prior criminal history, and discussed this matter with his counsel "over and over and over." (Dkt. 8, Ex. 23, pp. 263-64.) Likewise, the record shows that Nelson readily participated in court proceedings. At the start of trial, Nelson told

---

[9] Florida Rule of Criminal Procedure 3.211(a)(2) provides that, in considering a defendant's competency to proceed, experts shall consider the defendant's capacity to (I) appreciate the charges; (ii) appreciate the range and nature of possible penalties; (iii) understand the adversary nature of the legal process; (iv) disclose to counsel facts pertinent to the proceedings; (v) manifest appropriate courtroom behavior; and (vi) testify relevantly.

the successor trial judge what he believed caused the mistrial and took part in a hearing when he complained to the court that his counsel was inadequate. (Dkt. 8, Ex. 4, pp. 356-57, 361-74.) During trial, he answered the court's questions concerning his decision to testify and gave testimony before the jury. (Dkt. 8, Ex. 5, pp. 819-21, 849-94.)

Under these circumstances, Nelson has not shown that his counsel performed deficiently in not investigating his competency or requesting that the court order a competency evaluation. *See Strickland*, 466 U.S. at 691 ("[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

Nor has Nelson shown prejudice as a result of counsel's performance. "In order to demonstrate prejudice from counsel's failure to investigate his competency, [a] petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.'" *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (quoting *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988)). As his allegations do not establish his incompetency, Nelson fails to show a reasonable probability that experts would have concluded, and the court would have found, that he was incompetent to proceed.

Accordingly, Nelson fails to show a reasonable probability that he would have been adjudicated incompetent to stand trial had he been evaluated. As he has not shown either deficient performance by counsel or resulting prejudice, he fails to demonstrate that his defaulted claim of ineffective assistance of trial counsel is a substantial claim. Consequently, he cannot overcome the default of Ground One(A).

**Ground One(B)**

Nelson claims that he rejected the State's 10-year plea offer based on counsel's erroneous advice "that he was looking at 15 years in prison if he were to reject the State's plea deal and were convicted at trial" based upon the sentencing guidelines scoresheet, when Nelson actually faced a life sentence upon conviction at trial. (Dkt. 1, p. 7.) This claim of ineffective assistance of trial counsel is unexhausted due to Nelson's failure to raise it in state court and is now procedurally defaulted.

A defendant is entitled to the effective assistance of counsel during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Preliminarily, Nelson offers no evidence to support his claim that the State made a 10-year offer. Even assuming, however, that the offer was made and counsel's misadvice caused him to reject it, Nelson has not established prejudice because he fails to show a reasonable probability that the trial court would have accepted the plea. *See Missouri v. Frye*, 566 U.S. 134, 147 (2012) (to demonstrate prejudice resulting from counsel's deficient advice to reject a plea, a petitioner must "demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had authority to exercise that discretion under state law.").[10]

In charging him with counts one through four, attempted first degree murder and aggravated assault, the State alleged that he discharged a firearm. (Dkt. 8, Ex. 1.) By

---

[10] Florida courts have such discretion. *See Scott v. State,* 909 So.2d 364, 368 (Fla. 5th DCA 2005) ("[A] judge is not required to accept a plea negotiated by the parties.") (citing Fla. R. Crim. P. 3.170(a); 3.171(d); *Jernigan v. State*, 608 So.2d 569, 570 (Fla. 1st DCA 1992) ("A trial court is not obligated to accept a plea agreement which binds it to a specific sentence.").

entering a plea, Nelson would have admitted that he discharged a firearm. *See Stovall v. State*, 252 So.2d 376, 378 (Fla. 4th DCA 1971) ("A plea of guilty . . . if voluntarily and understandingly made, admits for the purposes of that particular case, [a]ll of the facts charged.").

Florida law therefore required the imposition of a 20-year sentence. *See* § 775.087(2)(a)2., Fla. Stat. (2000) (upon conviction for attempted murder or aggravated assault,[11] when the offender discharges a firearm, the offender "shall be sentenced to a minimum term of imprisonment of 20 years."). Nelson has not cited any authority providing that this 20-year term may be waived by the State in plea negotiations or by the court at sentencing, and the statute states that it "shall" be imposed. Thus, a 10-year sentence would have been contrary to Florida law. But "[a] court cannot impose an illegal sentence pursuant to a plea bargain, nor may a defendant agree to an illegal sentence as part of that bargain." *Blanchette v. State*, 620 So. 2d 258, 259 (Fla. 1st DCA 1993) (citing *Williams v. State*, 500 So.2d 501, 503 (Fla. 1986) and *Danzy v. State*, 603 So.2d 1320, 1322 (Fla. 1st DCA 1992)). Accordingly, Nelson has not shown a reasonable probability that the trial court would have accepted a 10-year plea agreement. He has not presented a substantial claim of ineffective assistance of trial counsel to overcome the default of Ground One(B).

**Ground One(C)**

Nelson alleges that the prosecutor in his case used peremptory strikes to exclude two black prospective jurors because of their race. He claims that trial counsel was ineffective for failing to preserve his objection to the strikes for appeal. Nelson appears to

---

[11] The statute was later amended to eliminate aggravated assault as a qualifying offense. *See* Ch. 2016-7, § 1, Laws of Fla.

claim that the prosecution's use of peremptory strikes violated *Batson v. Kentucky*, 476 U.S. 79 (1986), in which the United States Supreme Court held that striking prospective jurors solely on account of their race violates the Equal Protection Clause. This claim is unexhausted due to Nelson's failure to raise it in state court, and is procedurally defaulted.

Counsel objected to the prosecution's peremptory strikes of prospective jurors 1 and 12. (Dkt. 8, Ex. 4, pp. 532, 535.) But counsel did not renew his objection prior to the jury's being sworn in. (*Id.*, p. 551-Ex. 5, p. 565.) Therefore, the *Batson* challenge was not preserved. *See Joiner v. State*, 618 So.2d 174, 176 (Fla. 1993) ("We do not agree with Joiner . . . that he preserved the *Neil*[12] issue for review. He affirmatively accepted the jury immediately prior to its being sworn without reservation of his earlier-made objection. . . . Had Joiner renewed his objection or accepted the jury subject to his earlier *Neil* objection, we would rule otherwise."). *See also Carratelli v. State*, 961 So.2d 312, 318-19 (Fla. 2007).

 Even if counsel therefore performed deficiently, however, Nelson fails to show a substantial claim of ineffective assistance of trial counsel because he has not demonstrated prejudice due to counsel's performance.

The prosecutor asked several prospective jurors, including Prospective Juror 1, about anticipated profanity in the evidence:

> [STATE]: [Prospective Juror 17], while I'm talking to you, I'm gonna ask you this question too. Um, there may be some occasions in this particular case where you hear a lot of cursing.
>
> Um, is there anything about the fact that there's gonna be some profanity, that may cause you some problems listening to the case?

---

[12] *State v. Neil*, 457 So.2d 481 (Fla. 1984) (setting forth procedures when peremptory strikes are challenged as being based on race).

PROSPECTIVE JUROR NO. 17: No.

[STATE]: Okay.  You say that with some hesitation.  Um, is it that you don't like profanity?

PROSPECTIVE JUROR NO. 17: Yeah.

[STATE]: But you can still listen to the case and make a decision about the facts?

PROSPECTIVE JUROR NO. 17: Exactly.

[STATE]: Okay.  Anybody here think that, "She's telling me there's gonna be profanity and I just can't listen to that"? [Prospective Juror 23], is it?

PROSPECTIVE JUROR NO. 23: Yeah.

[STATE]: Okay.

PROSPECTIVE JUROR NO. 23: Well, I was brought up in a home where we were told to be polite to adults and when there's any cussing in the room, it's just - - I'm just uncomfortable around it.

[STATE]: Okay.  Um, thank you, ma'am.

PROSPECTIVE JUROR NO. 23: Uh-hum.

[STATE]: Anybody else that it's gonna make you so uncomfortable that you cannot set that aside and listen to this particular case?  Everybody here is okay with that? [Prospective Juror 1], were you - - were you looking at me or was I just catching ya - -

PROSPECTIVE JUROR NO. 1: No.  I was listening to you. I was just wondering, it depends on, um, are we gonna get gutter trash profanity here or not?

And, um, I can listen, I don't condone it, but I can listen.  I mean, if it's gonna get downright ugly and nasty, that's not the kind of profanity anyone should be hearing.

[STATE]: Okay.  So if it is pretty bad, you think it's gonna be a problem for you?

PROSPECTIVE JUROR NO. 1: I don't appreciate it, but I can listen.

[STATE]: Okay.  Thank you , sir, I appreciate that . . .

(Dkt. 8, Ex. 4, pp. 464-66.)

The State also questioned Prospective Juror 12:

[STATE]: [ ] Okay.  Um, do you have any difficulties with [the standard of proof of beyond a reasonable doubt]?   Do you think that that's the appropriate burden or do you think it should be something more or less?

PROSPECTIVE JUROR NO. 12: I think everything is in your hands.

[STATE]: Okay.  Meaning I have to prove it to you, right?

PROSPECTIVE JUROR NO. 12: Yes.

[STATE]: I'm sorry, sir?

PROSPECTIVE JUROR NO. 12: Yes.

[STATE]: Okay. . . . Um, do you understand that "beyond a reasonable doubt" and "beyond a shadow of a doubt" are two different thing?

PROSPECTIVE JUROR NO. 12: I'm not quite really - -

[STATE]: I'm sorry, sir?

PROSPECTIVE JUROR NO. 12: I'm not quite - - I don't really - - I haven't been through jury before.

[STATE]: Okay.

PROSPECTIVE JUROR NO. 12: So I'm not familiar, you know, exactly.

[STATE]: Okay.  Well, did you understand what I was talking about how the Judge makes decisions about what the law is?

PROSPECTIVE JUROR NO. 12: Yes.
 . . .

[STATE]: I'm gonna try and say your name again. . . .

PROSPECTIVE JUROR NO. 12: Yes.

[STATE]: Okay.  I'm getting better - -

PROSPECTIVE JUROR NO. 12: - -

[STATE]:I'm sorry?

PROSPECTIVE JUROR NO. 12: French.

[STATE]: Ah.  Are you, um, are you - - is your family from France or from somewhere else?

PROSPECTIVE JUROR NO. 12: No.  I'm from Haiti.

[STATE]: Okay.  How long have you been here?

PROSPECTIVE JUROR NO. 12: Um, I've been here 16 years.

[STATE]: Okay.  So, um, do you have any, um - - and I don't mean to be offensive by this, but is English your first language?

[PROSPECTIVE JUROR NO. 12: No.

[STATE]: Okay.  French?

PROSPECTIVE JUROR NO. 12: Actually Creole.

[STATE]: Creole.  Okay.  Um, do you have any difficulty with English, though?

PROSPECTIVE JUROR NO. 12: No.

[STATE]: Okay.  And because you're from Haiti, do you think that that will cause problems listening to what goes on in court?

PROSPECTIVE JUROR NO. 12: No.

[STATE]: Okay.

PROSPECTIVE JUROR NO. 12: It's some words, you know, like, for instance, English I would, you know - - I do take English, but, you know, some words I probably don't know exactly what it means.

[STATE]: Okay.

PROSPECTIVE JUROR NO. 12: But I do understand you though.

[STATE]: Okay.

PROSPECTIVE JUROR NO. 12: - -

[STATE]: Okay. So if, um, if I say something, um that you don't understand the word because it's not a - - an English word you're familiar with, can you let me know?

PROSPECTIVE JUROR NO. 12: Yes.

(Dkt. 8, Ex. 4, pp. 407-12.)

Defense counsel objected when the prosecutor sought to use a peremptory strike against Prospective Juror 1:

STATE]: Judge, I'd like to strike number one.

[COUNSEL]: Your Honor, we'd ask for a race neutral reason why?

[STATE]: Judge, um, on that audiotape that I mentioned previously, there is an extreme amount of cursing by the victim in that particular case . . . . um, profanity by the victim, and, um, [Prospective Juror 1] was the only juror that, um, indicated extreme reticence about that and indicated that he couldn't take it.

Um, he indicated that if it was really guttural and profuse, that it would be a problem; and it is, so, um, I would like to strike him, Judge.

THE COURT: [Counsel]?

[COUNSEL]: Judge, um, I believe also the fact that he - - he said that if he had to, he could listen to it. He doesn't like profanity, I've heard the tape, it's - - there are some - - there is some profanity in it, but it's not guttural, it's not, I believe, as, um, offensive as to warrant him being taken off - -

THE COURT: It's a - -

[COUNSEL]: - - the jury panel.

THE COURT: - - it's a race neutral reason; that's all [the prosecutor] needs. It's a - - this isn't for cause, this is her reason and it's a race neutral reason.

[COUNSEL]: Judge, we object.

THE COURT: And what's guttural and what's offensive, I think, really is in the mind or the ear of the listener. So I, certainly, wouldn't allow this to go on for

cause but I - - [Prospective Juror 1] was pretty clear. Um, anything else you want on that issue?

[COUNSEL]: Judge, we would be objecting to his exclusion for the record.

(Dkt. 8, Ex. 4, pp. 531-32.)

The prosecutor also sought to strike Prospective Juror 12:

[STATE]: I'm gonna strike him.

[COUNSEL]: Judge, again, we would inquire of a race neutral reason.

THE COURT: - - State strike on 12. Okay. Give him a race neutral reason, please.

[STATE]: Judge, this is the one that I previously asked the Court to strike for cause because of his, um, language issues.

Um, so all the reasons that I stated before, [13] basically, that he did indicate that, um, there are some words that he may not understand, and I have concern, because I have this 20 minute audiotape, Judge.

And the - - the quality is poor and I think that if he has any language issues, he's gonna miss that part of the evidence.

[COUNSEL]: Judge, and if the quality of the tape is poor, then anybody would have difficulty understanding the tape.

Just because they don't - - may not have English as their first language, I also objected that I believe it's pretextu[]al in nature.

Again, Mr. Nelson being African American, I believe the State does not want African American jurors deciding this case, and I believe their strike is pretextu[]al as to both [Prospective Juror 1], who was previously struck, and this gentleman.

THE COURT: Well, the strike stands. I think their - - legitimately, your concerns are legitimate. I don't think there's anything pretextu[]al. . . . 12 is stricken for cause by - - um, not for "for cause", I'm sorry. Stricken

---

[13] In seeking to remove Prospective Juror 12 for cause, the prosecutor asserted that "he had some difficulty understanding me when I was talking about 'beyond a reasonable doubt' and 'beyond a shadow of a doubt'" and that she was "worried the [tape] evidence won't be particularly meaningful to him because of the language barrier." (Dkt. 8, Ex. 4, pp. 526-27.)

peremptory challenge by the State.

(*Id.*, pp. 534-35.)

A review of a peremptory strike involves three steps:

First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts give rise to an inference of discriminatory purpose." 476 U.S., at 93-94, 106 S.Ct. 1712 (citing *Washington v. Davis*, 426 U.S. 229, 239-242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. 476 U.S., at 94, 106 S.Ct. 1712; see also *Alexander v. Louisiana*, 405 U.S. 625, 632, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (*per curiam*).

*Johnson v. California*, 545 U.S. 162, 168 (2005).

Nelson does not argue about the first two steps of the *Batson* inquiry. He claims that the trial court's decision at the third step of the inquiry would have been reversed because the prosecutor's reasoning would have been found to be a pretext for intentional discrimination. In *Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310 (11th Cir. 2003), the Eleventh Circuit conducted a *de novo* review of a claim that trial counsel was ineffective for failing to preserve a *Batson* challenge for appeal. *Id.* at 1313. It determined that, "when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." *Id.* at 1316.

On direct appeal, "[t]he trial court's decision to uphold a peremptory strike is reviewed for an abuse of discretion." *Truehill v. State*, 211 So.3d 930, 942 (Fla. 2017)

(citing *Files v. State*, 613 So.2d 1301, 1304 (Fla. 1992)).  "In deciding whether the proffered race-neutral reason for the peremptory strike is a pretext, the Court should focus on the genuineness of the explanation, not the reasonableness."  *Id.* at 943 (quoting *Poole v. State*, 151 So.3d 402, 410 (Fla. 2014)).  In assessing genuineness, however, reasonableness is considered, along with relevant circumstances, including "a strike based on a reason equally applicable to an unchallenged juror."  *Id.* (quoting *Poole*, 151 So.3d at 410).[14]  A trial court's finding that the prosecutor's reason was not a pretext for discrimination is given deference.  *See Batson*, 476 U.S. at 98 n.21 ("Since the trial judge's findings . . . largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.");  *Melbourne v. State*, 679 So.2d 759, 764-65 (Fla. 1996) ("[T]he trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous.").

Nelson first argues that the trial court erred in not conducting "a genuineness analysis."  (Dkt. 1, p. 11.)  The trial court made a finding that the state's challenges were not pretextual in response to defense counsel's challenge to both strikes.  (Dkt. 8, Ex. 4, p. 535.)  However, Nelson does not cite any authority providing that the court must elaborate on its reasoning.  To the contrary, a court may implicitly find a prosecutor's reasoning credible.  *Sneed v. Fla. Dep't of Corr.*, 496 Fed. App'x 20, 27 (11th Cir. 2012) (citing *Hightower v. Terry*, 459 F.3d 1067, 1072 n.9 (11th Cir. 2006)).  Thus, Nelson fails to establish a meritorious appellate claim.

---

[14] *Truehill* also provides that a court may consider "the racial make-up of the venire [and] prior strikes exercised against the same racial group. . . or singling the juror our for special treatment."  211 So.3d at 943. Nelson does not argue that any of these factors provided a basis for relief.

The State struck Prospective Juror 1 due to his hesitation about listening to evidence containing profanity. Nelson argues that this was a pretext for discrimination, as the prosecutor's reason also applied to Prospective Juror 17, a white male whom the prosecutor accepted.[15] Specifically, Nelson asserts that Prospective Juror 17 gave a "virtually identical" answer when asked about profanity. (Dkt. 1, p. 12.) The record refutes this assertion. Prospective Juror 1's responses suggested that whether he might have a problem listening to the case depended on the degree of profanity in the evidence, and he stated that it if was "downright ugly and nasty," then no one "should be hearing" it. (Dkt. 8, Ex. 4, p. 466.) Prospective Juror 17 did not answer similarly to Prospective Juror 1. He simply confirmed that he did not like profanity but could listen to the case and make a decision. (Dkt. 8, Ex. 4, p. 465.) Thus, Nelson fails to show that the strike's applicability to the unchallenged juror was a basis for reversal on appeal.

Nelson also argues that the strike of Prospective Juror 12 for potential language difficulties was a pretext for discrimination because Prospective Juror 12 understood English. Nelson further alleges that a poor-quality tape would be hard for anyone to understand. As the prosecutor suggested, the tape was of considerable evidentiary value for the State. It captured a phone call between Nelson and Carey in which Nelson apologized to Carey and asked Carey not to put him in prison. (Dkt. 8, Ex. 5, pp. 650-61.) Prospective Juror 12 acknowledged that he did not know some English words. And Nelson does not deny that difficulties listening to poor-quality audio would be greater for Prospective Juror 12 than for someone without his acknowledged limitation. Accordingly,

---

[15] Prospective Juror 17 was accepted by the State but stricken by the defense. (Dkt. 8, Ex. 4, pp. 537-39.)

Nelson does not show that the prosecutor's concern about Prospective Juror 12's ability to comprehend the tape was unreasonable or was equally applicable to unchallenged jurors.

Accordingly, Nelson has not established a reasonable probability that an appellate court would have determined that the trial court abused its discretion in finding that the peremptory challenges were not a pretext for purposeful racial discrimination under the circumstances of his case, especially in light of the substantial deference that must be afforded to the trial court's finding.

Alternatively, the Florida Supreme Court has held that, in postconviction proceedings, to show prejudice from counsel's alleged failure to preserve a *Batson* challenge, a movant must show prejudice at the trial:

> [W]hen considering the failure to preserve a challenge to potential jurors in *voir dire*, the reviewing court should focus on the defendant's trial, not his appeal. . . . Under such circumstances, this Court held that a defendant must show that a biased juror served during the defendant's trial to satisfy Strickland's requirement of showing a reasonable probability of a more favorable result.

*King v. State*, 211 So.3d 866, 887 (Fla. 2017) (citing *Carratelli*, 961 So. 2d at 323-24).

Thus, to the extent prejudice at trial–which the Florida courts would have considered had Nelson's ineffective assistance of trial counsel claim been raised in the initial review collateral proceeding–is considered in the *Martinez* assessment, Nelson still fails to demonstrate prejudice. He has not demonstrated that a biased juror sat on the jury. *See id.* Accordingly, Nelson fails to show prejudice as a result of trial counsel's failure to preserve his *Batson* claim for appeal. Nelson has not demonstrated a substantial claim of ineffective assistance of trial counsel and therefore cannot overcome the procedural default

of Ground One(C).

**Ground One(D)**

Nelson argues that trial counsel was ineffective for failing to investigate and call Virginia Vaughn as a witness to corroborate his defense of mistaken identity.  This claim is unexhausted due to Nelson's failure to raise it in state court and is procedurally defaulted.  Vaughn, who did not testify at trial, was listed as a victim in this case.  (Dkt. 8, Ex. 1.)  Nelson now claims that Vaughn would have "excluded him as the shooter."  (Dkt.1, p. 13.)  But Nelson has not offered any evidence that Virginia Vaughn would have given such exculpatory testimony.  His argument is therefore too speculative to give rise to a substantial claim of ineffective assistance of trial counsel.  *See Ashimi*, 932 F.2d at 650; *Johnson*, 256 F.3d at 1187.  Accordingly, Nelson has not presented a substantial claim of ineffective assistance of trial counsel sufficient to overcome the default of Ground One(D).

**Ground One(G)**

Nelson claims that trial counsel was ineffective for failing to investigate and present mitigating evidence at his sentencing hearing.  Nelson raised a similar claim in his initial postconviction motion but abandoned it.  (Dkt. 8, Exs. 14, pp. 65-67; Ex. 18, p. 591.)  He now raises different factual allegations that were not presented to the state court.  Accordingly, this claim of ineffective assistance of trial counsel is unexhausted and procedurally defaulted.  *See Anderson*, 459 U.S. at 6; *Weeks*, 26 F.3d at 1044-46.

Nelson contends that counsel failed to interview his family and friends, obtain his school, medical, and psychiatric records, or obtain a psychological evaluation.  He claims that, had counsel done so, counsel would have been able to present significant mitigating evidence, including:  evidence that he is "mentally retarded" and "emotionally

handicap[ped]"; evidence that he has an "emotional disability" and a learning disability; evidence that he has organic brain damage and "intellectual deficits"; evidence of mental illness; testimony of family members that he has suffered physical, emotional, and sexual abuse and has witnessed abuse; testimony from his children that he is a good father; and testimony from his pastor and fellow church members that he is "fundamentally" a good person. (Dkt. 1, pp. 19-20.)

Nelson has not shown that his counsel was ineffective, or that there is a reasonable probability the trial court would have imposed a different sentence had counsel presented additional mitigation. Although he claimed at the sentencing hearing that family members would have testified on his behalf but were given the wrong court date, he has not presented any information showing what they would have said. This failure renders his claim speculative. *See Ashimi*, 932 F.2d at 650; *Johnson*, 256 F.3d at 1187. Furthermore, there is some evidence that Nelson did not actually want counsel to call witnesses. Specifically, upon conviction, Nelson told the court that he did not want his family to testify because he would prevail on appeal. (Dkt. 8, Ex. 5, pp. 1031-32.) In addition, Nelson has not presented any documentary evidence, despite his allegations that such records exist.

Finally, court explained the sentence imposed, stating that:

> I think you attempted to kill those two people, okay. . . . So from my perspective when you take a gun and shoot not once, but twice at another human being, you don't deserve to be walking outside with the rest of the human beings who are there. . . . I'm going to do what I think is justified at this point.

(Dkt. 8, Ex. 8, pp. 1087-88.)

Nelson has failed to establish any information that counsel was ineffective for failing to uncover or present. Nor has he demonstrated that counsel was ineffective for failing to

call any witnesses.  And, in light of the sentencing court's remarks, he has not shown a reasonable probability that such information or testimony about his background and character would have led the court to impose a lesser sentence.  Accordingly, Nelson has not demonstrated a substantial claim of ineffective assistance of trial counsel pursuant to *Martinez* to overcome the procedural default of Ground One(G).

**Ground One(H)**

Finally, Nelson argues that the cumulative effect of counsel's alleged errors deprived him of a fair trial.  This claim is unexhausted and procedurally defaulted.  As Nelson has not demonstrated any errors by counsel, he fails to establish a cumulative error claim. *See United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal.").  Accordingly, assuming Nelson's cumulative error claim constitutes an ineffective assistance of trial counsel claim subject to a *Martinez* analysis, it is not substantial.  Nelson does not overcome the procedural default of Ground One(H).

Any claims not specifically addressed in this Order have been determined to be without merit.

It is **ORDERED** that:

1. Nelson's petition (Dkt. 1) is **DENIED**.  The Clerk is directed to enter judgment against Nelson and to close this case.

2. Nelson is not entitled to a certificate of appealability (COA).  A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a COA.  *Id.*  "A [COA] may issue ...

only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Nelson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennara v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Nelson has not made this showing. Finally, because Nelson is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on September 28, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Reginald Bernard Nelson
Counsel of Record